306 S.W.2d 730 (1957)
TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,
v.
Stanley J. YOTHER, Appellee.
No. 15841.
Court of Civil Appeals of Texas, Fort Worth.
October 11, 1957.
Rehearing Denied November 15, 1957.
*731 Burford, Ryburn, Hincks & Ford and Howard Jensen, Dallas, for appellant.
Peery & Wilson and Kearby Peery, Wichita Falls, for appellee.
MASSEY, Chief Justice.
From a judgment for claimant Stanley J. Yother for total and permanent disability benefits under the Texas Workmen's Compensation Act, the Company, Texas Employers' Insurance Association, brings an appeal.
Judgment is affirmed.
Upon the trial the parties stipulated that in the event the verdict of the jury was for total and permanent disability the Company would pay same in a lump sum. As a result, the question of claimant's financial circumstances and hardship incident to payment of compensation from week to week passed out of the case. Upon cross-examination the Company's attorney asked the claimant how much money his lawyers had given him since he employed them. An objection to the question was sustained. Sustaining the objection was proper. Whether or not claimant's attorneys or anyone else had given him money would have no bearing on any issue in the case.
Also during cross-examination Company's counsel wanted to ask claimant if it were not a fact that he had served a term *732 in the penitentiary at Huntsville on a conviction in 1934 for "bootlegging". It was further desired to show that he had been in jail on various occasions. It seems that claimant was incarcerated temporarily on numerous occasions incident to drinking whiskey. On direct examination, without objection, claimant had testified that he had never been charged with or convicted of a crime, and that he had never been in jail anywhere. The matter, whether upon direct or cross-examination, was not relevant to any issue in the case. Of course, claimant's incarceration in the penitentiary was pursuant to a conviction of a felony, but it was over 20 years prior to the occasion of the trial, and it does not appear that the Company was prepared to show additionally that claimant had not reformed. Indeed, the sale of whiskey in this state is a licensed business at present.
Claimant's testimony upon the matter during his direct examination was inadmissible and would have been stricken upon an objection interposed. However, there was no objection. The Company desired to show that the witness was lying, albeit upon an immaterial matter. That being the case the trial court properly sustained the objection taken to the attempt at impeachment, for it is well established that a witness cannot be contradicted upon a matter immaterial to the disposition of issues on trial. 45 Tex.Jur., p. 26, "Witnesses", sec. 193, "Right to Contradict in General".
Though the penitentiary sentence was undoubtedly a felony, the evidence was not rendered admissible by reason thereof (even considered as having involved moral turpitudesee McCormick and Ray, Texas Law of Evidence, 2nd Ed., sec. 660, as to necessity therefor) since it was too remote consideration given to the fact that proof tendered thereupon did not include evidence showing that the claimant had not mended his ways and reformed. Bernard's, Inc., v. Austin, 1927, Tex.Civ.App., Dallas, 300 S. W. 256, error refused. It is to be noted that the Supreme Court's notation "refused" came within a few months after the notation first began to mean "principles of law declared in the opinion of the court are correctly determined."
The Company's points four, five and six all relate to a particular manner in which certain special issues were submitted and phrased, as a result of which the Company contends that the jury was permitted to base a finding of total and permanent disability in whole or in part upon loss of use of a specific member rather than upon general injuries,or to make a like finding under a theory or pyramiding the disability from general injury upon disability from a concurrent specific injury rather than permitting recovery only for the injury causing the longest period of incapacity.
The special issues in question are:
"Special Issue No. 2: Do you find from a preponderance of the evidence that the Plaintiff sustained an injury on or about the 24 day of April 1956? Answer `Yes' or `No.'" (The jury answered "Yes.")
"Special Issue No. 5: Do you find from a preponderance of the evidence that the Plaintiff sustained any total disability following the injury, if any, inquired about in Special Issue No. 2? Answer `Yes' or `No.'" (The jury answered "Yes.")
"Special Issue No. 6: Do you find from a preponderance of the evidence that the injury, if any, previously inquired about, was a producing cause of the total disability, if any, sustained by the Plaintiff? Answer `Yes' or `No.'" (The jury answered "Yes.")
"Special Issue No. 8: Do you find from a preponderance of the evidence that such total disability, if any, inquired about in Special Issue No. 5, has been and will be permanent, or has been or will be temporary? Answer `Permanent' or `Temporary.'" (The jury answered "Permanent.")
*733 However, there were other special issues which are important to note, along with jury findings made thereon. In Special Issues Nos. 2-A, 2-B, 2-C and 2-D the jury was requested to and did find that the injury inquired about in Special Issue No. 2 was an injury to his back and neck, each and both of which was a producing cause of his disability. No issue found that the injury to the leg produced any disability. No issue thereon was submitted. In Special Issue No. 19 the jury refused to find that the injury (injuries) resulting from his accident was confined to his left foot, ankle, and leg below the knee.
In the pleadings of the parties the claimant relied upon a contention of general injury, i. e., to the neck, back and leg. The Company plead that the injuries were confined to the left ankle and leg below the knee. In view thereof an issue as made by the pleadings was whether or not the claimant sustained a general injury concurrent with an injury to the left leg below the knee, whether the general injury was a producing cause of his disability, and whether the disability experienced by the claimant was total and permanent.
We believe that the general rule is established that where an injured workman proves an injury to a specific member of the body and also a concurrent general injury, he is entitled to recover for the injury which produces the longest period of disability, and that where both injuries are permanent he is entitled to recover for the combined effects of both.
Although the Company's pleadings affirmatively presented the question of the "confinement" of claimant's injuries to the ankle and leg below the knee, it did not likewise present the question of whether the incapacity, if any, of the claimant was caused solely by the injury to and/or the incapacity stemming from, the claimant's ankle and leg below the knee. For convenience of disposition we will treat the pleadings as though they had done so. With the pleadings so treated the Company would have had the burden of proving and having issues thereon submitted to the jury and answered in such manner as would establish that the claimant's incapacity was caused solely by the injury to, and/or the incapacity stemming from, the ankle and leg below the knee. The Company did not request issues upon these questions. It did specially request an issue inquiring whether the injury which resulted from the claimant's accident was confined to his left foot, ankle and leg below the knee. This question was quite different from those which would have been posed by inquiries bearing upon the cause of the incapacity inquired about in the claimant's issues, presenting an affirmative defense (or defenses) in such regard. Texas General Indemnity Co. v. Scott, 1952, 152 Tex. 1, 253 S.W.2d 651. Issues thereupon would not be issues relied upon by the claimant, so the failure of the trial court to submit issues posing the questions in a satisfaction of the Company's objections and exceptions would not be grounds for reversal since no additional special issues were requested in writing and tendered by the Company to the court prior to the submission of the charge. Texas Rules of Civil Procedure, rule 279.
Neither the existence nor the sufficiency of the evidence to support the allegations of the claimant's petition upon the matter of general injury, nor of the jury's verdict in such regard, is challenged upon the appeal. The jury could have concluded that the claimant's disability was the result of the cumulative effect of all of the injuries described in the petition on which there was evidence. No issues having been requested nor submitted in limitation or qualification of the effect of the jury findings, we are of the opinion that we should accept such, in disregard of any further possible conclusion that the finding of total disability was based upon injury to claimant's leg and from disability resultant therefrom in a greater number of weeks than the 125 prescribed in Article 8306, sec. 12, Vernon's Ann.Civ.St. Hargrove v. Trinity *734 Universal Ins. Co., 1953, 152 Tex. 243, 256 S.W.2d 73. Furthermore, it seems to have become settled that where incapacity stemming from a specific injury (for which the law limits the compensation payable) operates concurrently with incapacity occasioned by a concurrent general injury to produce total and permanent disability, the injured workman is entitled to recover compensation benefits for total and permanent incapacity. Consolidated Underwriters v. Lowrie, 1939, Tex.Civ.App., Beaumont, 128 S.W.2d 421, error refused; Texas Employers' Ins. Ass'n v. Tanner, 1949, Tex.Civ. App., Amarillo, 218 S.W.2d 277, writ ref., n. r. e; Traders & General Ins. Co. v. Daniel, 1938, Tex.Civ.App., El Paso, 114 S. W.2d 336; Maryland Casualty Co. v. Mueller, 1922, Tex.Civ.App., Texarkana, 247 S.W. 609. The rationale of the holdings seems to acknowledge the difficulty, at least in an ordinary case, for a finder of facts to segregate the incapacities or to establish that a jury necessarily must have exceeded the number of weeks prescribed by statute for compensation because of that part of the injury which involved a specific loss or "loss of use." This establishes a general rule. Where an employee sustains both a specific and a general injury he is entitled to recover only for the injury producing the longest period of incapacity, but where the jury finds that the incapacity from both is both total and permanent the burden must be placed upon the insurance company in any reduction of the disability to a temporary period. If it be possible to do so here, without indulging in pure speculation and surmise, the manner of its doing escapes us. We therefore must adhere to the general rule and overrule the Company's points directed to the contention.
We now advert to the Company's remaining points, all of which are directed to the contention that the trial court either had no discretion to proceed to trial, or, if it did have the discretion so to do, such was abused in the overruling of the Company's motions directed to the striking of the setting and for continuance.
The Company places considerable reliance upon these points of error, having placed them foremost in its brief, and having devoted the major part thereof to them.
Relative to its contention that the trial court had no discretion in the matter and was required by provisions of law to strike the setting originally made, and/or to continue the case, the Company refers us to T. R. C. P. 330, and in particular to subdivision (b) thereunder. In general, the rules provide that as to civil actions in district courts having successive terms in counties throughout the year, without more than two days intervening between any of said terms, Rule 330 and its subdivisions shall govern practice and procedure therein.
Rule 330, subd. (b), provides: "On the first Monday in each calendar month the judge of each court may, and as far as practicable shall, set for trial during the calendar month next after the month during which the setting is made, all contested cases which are requested to be set, and by agreement of the parties, or on motion of either party, or on the court's own motion with notice to the parties, the court may set any case for trial at any time so as to allow the parties reasonable time for preparation. * * *"
As applied to the foregoing provisions, we are of the opinion that the section relative to setting a case for the month following that on which a docket is called the first Monday of the month preceding is directory and not mandatory. We so hold. This leaves remaining the section relative to the liberty of a court to set a case at any time with notice to the parties so as to allow them reasonable time for preparation. Our construction of this section is that it is mandatory only in that the court should not set the case for trial so soon that either party, after notice thereof, will have insufficient time to prepare for trial. It does not provide that before a case is set either party is entitled to be informed that the court is considering making a setting on a certain date so as to afford *735 an opportunity to be present and discuss the matter as of the time the setting is to be made. This should be clear from the provision that the court is at liberty to set a case on its own motion. The applicable rules relative to continuances are in no sense altered by the rule, and the question is more properly reached by a motion for continuance than by a motion to strike by any party who has not had reasonable time within which to prepare for trial. Thus, any additional grounds for continuance other than that of insufficiency of time within which to prepare may be advanced in the same motion.
Proceeding to the circumstances giving rise to the Company's original motion for continuance (and we treat as incorporated therein the matters set up by the separate motion to strike the setting), we note that there was no call of the docket on the first Monday of any month, at which the case was set for a time in the succeeding month. Instead, there was an ex parte request made by claimant's attorneys that the case be set as soon as possible. The judge to whom the request was made proceeded to set the case for November 19, 1956, notifying the Company's attorneys by letter. Of the setting, the Company was thus notified as of date of October 31, 1956. By prior arrangement, one of the Company's attorneys was in Wichita Falls on November 1, 1956, for the purpose of taking the claimant's oral deposition. The deposition was taken. Wichita Falls is the headquarters of one of the Company's branch claim offices. A Mr. McCracken is the Company's claims manager at said office, and an investigator-adjuster (working under Mr. McCracken out of said office) had conducted the major part of such investigation as had been made in behalf of the Company upon the matter of the claimant's injuries and disability. This adjuster had secured a written statement from the claimant after the date of his injury and had talked with him on at least one occasion subsequent to that time. During the course of taking the claimant's written statement, the adjuster had been furnished information giving the names of his foreman (Hawkins) and a co-employee and the names of all the claimant's employers since 1950, plus information concerning a prior injury he had sustained under the Workmen's Compensation Law.
Following the injuries out of which claimant's suit arose, he was first treated by a Dr. Meredith in Young County, where the accident had occurred, then was moved to Wichita Falls and placed in the hospital under the care of a Dr. Ledbetter, who is a resident of Wichita County. The Company had assumed the responsibility for this medical care, and for the expenses incident thereto, and had paid the claimant twelve weeks' compensation. Essentially, the Company's contentions in the case were not that no injury occurred nor that claimant was not covered by its policy on his employer, but that claimant's injury and resultant disability were specific, as applied to the leg below the knee, and that he was not totally or generally disabled and was not entitled to effect a recovery from the Company on the theory of general injury or disability.
The Company's policyholder, claimant's employer as of the time he was injured, gave the Company a report of injury promptly after claimant was injured. This report showed that witnesses to the accident were Mr. Hawkins and a Mr. Fuhrman. The Company located a Mr. Miley, another witness to claimant's accident, for he testified upon the trial in substantiation of the defensive theory. At time claimant's deposition was taken, he testified that at time of the accident the relieving crew had just come on the location, comprised of three or four men and a driller, none of whom were known to him. He gave the first name of another "roughneck" on his own crew as "Don," whose last name was unknown, but who lived in Jacksboro. He gave Mr. Miley's name as a witness. He told who his prior employers were, and about a prior injury while working in Decatur, Texas for the Reviere Drilling Company of Wichita Falls. At such time *736 Mr. Hawkins (driller at time of injury giving rise to the suit) was his immediate superior and a witness to his accident.
Following the time claimant's deposition was taken, the Company's attorneys analyzed same after it was transcribed, and on November 12 wrote Mr. McCracken at the Company's Wichita Falls office asking for information previously requested on October 25, plus: (1) ascertaining work record and general character as an employee and as to accidents, complaints, disability, etc., while employed by five named former employers of Wichita Falls and one "in Kansas" (the locality not otherwise stated); (2) checking with co-employees, including those just coming onto the location, about facts of injury and whether limited to leg below the knee, etc.; (3) the securing of the Industrial Accident Board records covering injury received while working for Reviere Drilling Company, and an injury sustained to his elbow on another occasion, for which he was treated by Dr. Ledbetter of Wichita Falls; (4) checking with driller Hawkins about the facts of the instant accident, and about the prior accident when claimant was working for the Reviere Drilling Company.
Either prior to the time the deposition was taken or subsequent thereto and before trial, the Company through its representatives saw the witness Miley, for he appeared and testified. The Company saw the witness Hawkins and alerted him to appear as a witness upon the trial, but he was never called as such. The witness Fuhrman, whose name appeared on the employer's first report of accident as a witness, was not called and the record does not show whether he was ever contacted. The record does not show whether or not any attempt was made to contract the other men who were working with the crew on which claimant was working, or the men on the crew just coming on the job to relieve them. Neither does it show whether any of the former employers of the claimant were contacted or attempted to be contacted. It does not show whether the Industrial Accident Board records as to the prior accidents were obtained or attempted to be obtained.
In outlining the state of the record, we are viewing the whole and entire record, including the record made on the Company's original motion, amended motion, evidence upon the trial on the merits, and evidence introduced upon the hearing of the Company's motion for new trial. The Company contends that we cannot do this, but that our review should be confined to the record as it appeared and was made at time the original motion for continuance was heard and certainly not on the motion for new trial. This cannot be true, for any reversal of the judgment by this court would be occasioned by the error of the trial court in refusing to grant the Company's motion for new trial and not merely because of its error in having overruled the motion for continuance in the first instance.
This is true because the error might, upon the trial, have been shown to have been cured or to have been harmless, as, for example, instances where the motion for continuance is based upon the absence of a material witness who later appears and testifies. We think that the same thing would be true if upon the motion for new trial it could be shown that the same witness did appear and make himself available to testify, but the party who had moved for a continuance because of his absence decided that the state of the record rendered it inadvisable to present his testimony.
If what has been said would apply in the case of such a witness, then it should apply to a question of whether in truth and in fact the party moving for continuance had time to prepare for trial or was lacking in diligence. The mere fact that the opposing party had not controverted the motion for continuance at the time it was made should not change such a rule, or at least it should not where it does not appear that the party was in possession of controverting information at the time the motion was made. *737 Though by provision of rule (T.R.C.P. 327) evidence is to be heard on the motion for new trial on the ground of jury misconduct, etc., there is no provision of law known to us which prohibits the introduction of testimony on an issue, when proper, posed by other grounds in the motion.
The ultimate question is whether an injustice has been done the party who moved for a continuance. If it appears from the record of the trial that no injustice was done in overruling the motion, such facts offer an additional reason why the verdict should not be disturbed. 9 Tex.Jur., p. 757, et seq., "Continuance", sec. 83, "Decision of Reviewing CourtMatters Considered." For the same reasons we believe that a record made on a hearing of a motion for new trial can be considered in resolving the ultimate question.
Adverting to the Company's original motion, it is to be noted that trial was of a case under the Texas Workmen's Compensation Act, and was a trial de novo following an appeal from a final award of the Industrial Accident Board. Before the Board, the hearing is of course predicated upon the claimant's claim for compensation. The basis for recovery in the district court is of course the petition for relief by the claimant, but it is confined as a matter of law. If a claimant's claim for compensation before the Board was for something less than total and permanent disability, he cannot appeal from the award and seek total and permanent disability in the district court. Therefore, we must presume that upon the trial (ordinarily denominated "hearing") before the Board the Company was "ready" on the claimant's action for total and permanent disability. As appeal from the Board's award was perfected, the case set, and claimant announced "ready" at the designated time. Of course, the Company could probably not have secured the claimant's deposition until after suit was filed in the district court, but the deposition was taken by agreement on November 1, 1956, eighteen days before trial date. Suit was filed on October 4 and service was obtained on the following day. The Company's original motion for continuance asserted that information obtained pursuant to the taking of the deposition made extensive additional investigation of the case necessary. It did not set forth what investigation, not theretofore indicated, was made necessary pursuant to information received upon the taking of claimant's deposition. It did attach as "Exhibit A" to the motion, the letter mailed November 12 to Mr. McCracken, the Company's Wichita Falls claims manager, in which certain investigation was requested. The motion asserted that, according to information received from Mr. McCracken, there was insufficient time to make the investigation requested. It did not set forth the diligence, if any, with which any particular part of the requested investigation was attempted, nor designate any testimony which was found to be unavailable within either the period from the date the deposition was taken to the date of the trial, or the period from the date of the letter to Mr. McCracken to date of the trial.
Diligence should be considered as the obligation of the party, not merely of the attorneys employed for the purposes of the trial. We do not believe that the affidavit demonstrates that degree of diligence in the circumstances (the character of the case taken into consideration along with opportunity afforded for investigation before the Company's counsel was employed) entitling the Company to a continuance as a matter of law, nor constitutes a sufficient showing that the trial judge abused his discretion in overruling the same. 9 Tex.Jur., p. 739, "Continuance", sec. 66, "Showing of Diligence." And if we be in error in our conclusions as to the efficacy of the motion on its face, the action of the trial court in overruling the motion would not be such as to require a reversal of the case, in light of the evidence bearing upon the question in the whole record, including that made at time of the hearing on the Company's motion for new trial.
*738 After the Company's original motion for continuance was overruled, the parties proceeded to trial and selected a jury. In the meantime, they agreed for the claimant to report to Dr. Ledbetter for an up-to-date physical examination, in order that during the course of this doctor's testimony upon the trial he would have the benefit of such current examination as well as his knowledge gleaned from the treatment of him as a patient during the first months following his injury. The Company's attorney telephoned Mr. McCracken in Wichita Falls to attend to the necessary arrangements. Apparently Mr. McCracken located the doctor just before he embarked on a trip by plane for California as the football "team doctor" for the college located in Wichita Falls. At least, in a subsequently filed amended motion for continuance, the Company's attorney made affidavit to the fact. The doctor left, and no examination was made of the claimant, no alternative request for examination by any other doctor having been made.
The following morning, November 20, the Company's attorney filed the amended motion, repeating all the grounds of the original, and setting up the facts relative to the absence of Dr. Ledbetter. He showed that the doctor was not subject to process out of the district court of the trial, asserted that he had been alerted to testify upon the trial and had promised to be available and to testify (this obviously by communication with Mr. McCracken, who never was present on the trial, nor, despite request of claimant's counsel, at the hearing on the motion for new trial). He showed that the doctor's testimony was material, in that he would testify that claimant had no general injury and that his disability did not exceed ten per cent as applied to the left foot and ankle (below the knee). He further showed that the doctor was familiar with the condition shortly after the accident and during the post-accident recovery, and that he would testify that no portion of claimant's body was injured other than his left foot and ankle.
Dr. Ledbetter's deposition had never been taken or requested by the Company prior to the trial. Under authority of Fritsch v. J. M. English Truck Lines, Inc., 1952, 151 Tex. 168, 246 S.W.2d 856, we are of the opinion that under the record it was within the discretion of the trial court to overrule the amended motion for continuance presenting as grounds therefor the absence of this witness. The Rules of Civil Procedure provide ways and means for a party to a suit to protect himself absolutely against the hazards of a trial in the absence of a witness, provided they are resorted to with promptitude and pursued with diligence. They include the provisions for procuring testimony by way of deposition. In the present instance the Company attempts to justify its failure to procure such a deposition by the contention that Dr. Ledbetter was connected with or obligated to it in that he was the Company's agent under the circumstances, or was in its service. The Company cites the case of Haley Fisheries, Inc., v. Payne, 1932, Tex.Civ.App., San Antonio, 48 S.W.2d 437, as authority for the contention.
In the Haley Fisheries case, supra, a judgment was reversed and the cause remanded because of the failure to grant a continuance (or to grant a new trial because of such failure) where the ground therefor had been the absence of a material witness who was also an officer of the defendant corporation. The Company cites also the case of United Employers Casualty Co. v. McCloud, 1940, Tex.Civ.App., Galveston, 146 S.W.2d 247, where the absent witness was a member of the partnership which was insured for Workmen's Compensation by the defendant.
While the principle of law announced in the cases upon which the Company relies may be correct, we nevertheless do not believe the principle applies to a witness such as Dr. Ledbetter. The doctor was not an employee nor officer of the Company or of its policyholder, nor was he an agent for it or the policyholder for general purposes. He *739 was in the private practice of the profession of medicine in Wichita Falls, presumably available for hire by the public at large in need of his professional services. Such services had been enlisted by the Company for the medical treatment of the claimant. If he was an agent for the Company the agency was of a special character only, being in behalf of the claimant. Therefore we see no occasion in this instance to depart from the general rules applicable to motions for continuance based upon the absence of a witness. In so holding we follow the case of Texas Employers' Ins. Ass'n v. Locke, 1949, Tex.Civ.App., Fort Worth, 224 S.W.2d 755, writ ref., n. r. e., an instance in which like grounds were advanced by this same appellant because of the absence of Dr. Ledbetter as a witness in another compensation case.
The judgment is affirmed.