**DALLAS COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NO. 7, Appellant,**

v.

**Gayle F. INGRAM, Appellee.**

No. 16597.

Court of Civil Appeals of Texas.

Dallas.

Oct. 8, 1965.

Rehearing Denied Nov. 5, 1965.

Saner, Jack, Sallinger & Nichols, H. Louis Nichols and Tim Kirk, Dallas, for appellant.

Lyne, Blanchette, Smith & Shelton and George C. Dunlap, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Action for damages for breach of employment contract. Following a period of employment pursuant to verbal agreement Gayle F. Ingram entered into a written contract on April 5, 1962 with Dallas County Water Control and Improvement District No. 7 (hereinafter referred to as Water District) wherein it was agreed that Ingram was to be employed as general manager of the Water District for a definite period of five years. As compensation for his services Ingram was to receive $500 per month for the full time of said contract with the provision that his salary would be reviewed from time to time and could be increased. In fact, such salary was increased on two different occasions until it reached the sum of $600 per month which was the amount being paid Ingram at the time the contract was terminated.

With reference to termination of the agreement Paragraph 4 of the contract provided:

> "4. The term of the agreement is five years from date executed. If the contract is cancelled by the District, claims shall be made and allowed to the Manager for services rendered to the full term of contract. If cancelled by Manager, no claims will be allowed beyond date of notification of intent to cancel."

On January 30, 1964 the Water District elected to terminate Ingram's employment and he brought this action to recover the amount which he contended would be due him for the remainder of the five-year term of the contract. By way of answer to Ingram's suit the Water District asserted two principal defenses. First, it contended that the employment contract was void and unenforceable because (1) it was *nudum pactum* and lacking in mutuality; and (2) that it had just cause for discharging Ingram in that (a) there were irregularities and shortages in the Water District's funds, (b) that Ingram failed to properly account for or explain the alleged deficiencies in the accounts as shown by the auditor's report, (c) that Ingram had received free water service to his individual properties without

paying the Water District for same, and (d) that Ingram failed to carry out the policies of the Water District.

Following a jury trial, and in response to special issues submitted to them, the jury found (1) that Ingram did not fail to properly account for the monies of such District; (2) that Ingram did not fail to carry out the policies of the Water District; (3) that Ingram did not fail to pay the Water District for water services furnished to him; and (5) that the sum of $19,000 would reasonably and fairly compensate Ingram for the damages incurred because of the cancellation of his contract of employment. Based upon such verdict judgment was rendered in favor of Ingram for $19,000 from which judgment the Water District has appealed.

■ By its first and eleventh points of error appellant contends that the trial court erred in refusing to sustain its motion for judgment *non obstante veredicto,* and that we should reverse and render the judgment, because the contract of employment sued upon is void and unenforceable, being lacking in mutuality of obligations and lacking in consideration. The burden of appellant's argument is that under the contractual terms appellee had no duty to perform any work nor to continue working for appellant for any period of time, and such failure on his part to perform all or part of his work would not have imposed any legal liability upon him. It says that since appellee had the right to terminate the agreement at his option, without incurring liability, appellant had the corresponding right to terminate the agreement free from liability. Appellant relies upon such cases as East Line & R. R. R. Co. v. Scott, 72 Tex. 70, 10 S.W. 99; St. Louis Southwestern Ry. Co. of Texas v. Griffin, 106 Tex. 477, 171 S.W. 703; Mutual Film Corp. v. Morris & Daniel, Tex.Civ.App., 184 S.W. 1060; and May v. Lee, Tex.Civ.App., 28 S.W.2d 202. The rule of law announced in these cases is undoubtedly sound, but upon careful examination and comparison of the record in this case with the cases cited we find that the au-

thorities relied upon by appellant are not controlling of the instant appeal.

■ The contract between appellant and appellee was clear and unambiguous. While not expertly nor artfully drawn it does clearly express the agreement of the parties. It appears to have been entered into freely and voluntarily. For a period of twenty-two months the parties complied with the express terms of the contract and recognized the same as a binding and enforceable agreement. No charge is leveled against the agreement as being in contravention of any law nor against public policy. No one claims it contravenes equity or good conscience. It was for a definite period of time and for a definite consideration consisting of mutual promises. Appellant agreed with appellee that if it terminated appellee's employment under the contract prior to the expiration of five years that it would be obligated to honor appellee's claim for services for the remaining period of the contract. This, of course, contemplated a discharge by appellant without just cause. The law did not deprive appellant of its right to terminate the contract, and discharging appellee for good cause, such rule being duly recognized by the parties as well as the trial court in the submission of the case to the jury.

■ Our Texas courts have held that a contract of employment is not void as unilateral because, although the employer is bound for a definite period, the employee may terminate it at pleasure. The real basis for the decisions is the agreement on the part of the employer, implied in law, that he will not unjustly or wrongfully discharge the employee during the period of the contract. Thus in St. Louis, B. & M. Ry. Co. v. Booker, Civ.App., 5 S.W.2d 856, the court was presented with the almost identical situation and appellant relied upon and cited the same cases cited by appellant in this case. The court, in denying the same argument made here said, *inter alia:*

"But in none of these cases [cited by appellant] was there an express

agreement by the employer not to terminate the contract without just cause. * * * As said by Judge Brown [in St. Louis Southwestern Ry. Co. v. Griffin, 106 Tex. 477, 171 S.W. 703] in the opinion above quoted, the liberty to make a contract for a lawful purpose is a natural right, which is beyond the power of government to take from the citizen. An employer and his employees have the right to agree with each other that the employer will not unjustly discharge the employee and will compensate the employee for the time lost by an unjust discharge and such contract is not invalid because of the fact that the employee has not agreed to remain in the service for any definite length of time."

In Gulf, C. & S. F. Ry. Co. v. Jackson, Tex.Civ.App., 69 S.W. 89, the court considered a similar agreement, and breach thereof by the employer, and answered the same contention as advanced here by saying:

"It was not necessary, in order to make this contract binding upon appellant, that the appellee should have agreed to work for that length of time. It was competent for the parties to make a contract binding upon one of them for a certain length of time, but which the other might terminate whenever he saw fit. Such being, in our opinion, the character of the contract shown by the evidence in this case, the appellant would be liable for all of the damages which were directly caused by its breach of the contract."

Numerous other Texas authorities assign this principle of law. Moore County Carbon Co. v. Whitten, Civ.App., 140 S.W.2d 880; Harper, et al v. Local Union No. 520, International Brotherhood of Electrical Workers, et al, Tex.Civ.App., 48 S.W.2d 1033; Mansell v. Texas & Pacific Ry. Co., et al, Com.App., 135 Tex. 31, 137 S.W.2d 997; Smith v. Hamilton, Civ.App., Tex.Civ. App., 237 S.W.2d 774; Dixie Glass Co. v. Pollak, Tex.Civ.App., 341 S.W.2d 530, 91 A.L.R.2d 662, affirmed, 162 Tex. 440, 347 S.W.2d 596; 56 C.J.S. Master and Servant § 6, p. 67.

■ The parties in this case could, and did, by their contract, agree that the same might terminate at the election of one or the other of them and the agreement may be enforced, if fairly made and the same is not contrary to equity or good conscience. Haley v. Nickels, Tex.Civ.App., 235 S.W.2d 683; Maddox Motor Co. v. Ford Motor Co., Tex.Com.App., 23 S.W.2d 333; 17A C.J.S. Contracts, § 399, p. 481, et seq. Appellant's first and eleventh points are overruled.

■ Appellant's second, eighth, twelfth and thirteenth points of error are "no evidence" points dealing with the answers of the jury to Special Issues Nos. 1, 2 and 3, as summarized above. Appellant contends that such answers have no support in the evidence. We have carefully considered these "no evidence" points within the rule directed by the Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and having done so we find some evidence of probative force to sustain the answer of the jury to each of said issues against which complaint is leveled. As a matter of fact, appellee's testimony, standing alone, would be sufficient to create an issue of fact on each of said issues. When carefully analyzed, the testimony of witnesses relied upon by appellant, creates issues of fact which would be sufficient to justify the answers of the jury to the issues. Accordingly, appellant's Points 2, 8, 12 and 13 are overruled.

■ By its fifth and ninth points of error appellant assails the answer of the jury to Special Issue No. 5, being the damage issue, in the sum of $19,000, saying same is excessive and that there is no evidence as to the present cash value of appellee's damages. We cannot agree with appellant on either of these contentions. Appellant bases its contention of excessiveness upon

the fact that the unexpired thirty-eight month time, when multiplied by $500, equals $19,000, the exact amount found by the jury, and therefore argues that the jury did not take into consideration mitigating evidence of the amount of money made by appellee following his discharge. Appellant overlooks the fact that at the time appellee was discharged he was earning $600 per month which, when multiplied by the thirty-eight months remaining on the contract term, equals $22,800, or $3,800 more than the amount found by the jury. Since the evidence does not reveal an exact figure as to the amount earned by appellee since the discharge we cannot say that the $3,800 difference could not account for the amounts within the instructions given to the jury by the court relating to earnings. Appellant presents no authority, nor have we been able to find any, to the effect that it is required and absolutely essential to introduce expert testimony relating to the present cash value of damages in such a case. Appellant's fifth and ninth points are overruled.

■ By its sixth point of error appellant complains of the action of the trial court in refusing to submit to the jury its requested special issue making inquiry whether there was a shortage in the funds of the Water District while Ingram was acting as general manager. In Special Issue No. 1 the court inquired of the jury whether Ingram had failed to properly account for the monies of the Water District, to which the jury answered that he did not so fail. When we consider the charge as a whole we are of the opinion that appellant's defense was adequately presented to the jury in Special Issue No. 1 and therefore it was not required that another and different phase or shade of the same issue be submitted, as requested by appellant. If, as the jury found, Ingram properly accounted for all of the monies of the District then it follows that there was no shortage. Rule 279, Texas Rules of Civil Procedure. We overrule appellant's sixth point of error.

By its seventh and tenth points of error appellant complains of the failure of the trial court to submit its requested issue reading as follows:

"Do you find from a preponderance of the evidence that the Board of Directors of the Water District had good cause to discharge Gayle Ingram as general manager of the Water District?"

■ The appellant, as above related, pled various acts of misconduct and failure to perform duty on the part of appellee as constituting "good cause" for its discharge of Ingram. Appellant requested, and the court submitted for the jury's consideration, four special issues, each asking questions relating to the specific acts upon which appellant had based its claim of "good cause". Having submitted appellant's requested issues on specific acts of omission and commission which went to make up the ultimate question of "good cause" we agree with appellee that appellant was not entitled to the submission of the global issue, completely unconditioned. We know of no rule of law, and have been cited to none, which permits a party to have both specific and general issues submitted. We find that appellant's defensive position was fairly submitted and not subject to the objection presented.

■ By its third point of error appellant contends that reversible error was committed by the trial court in admitting into evidence testimony of the witness Marvin Collier regarding a prior felony conviction. To support its alleged defense of justified cause for discharging Ingram the Water District relied principally upon the witness Marvin Collier, a public accountant, who testified that he had been employed to make an audit of the Water District's books during the time that Ingram was acting as general manager. Based upon such audit made by him he testified that shortages were revealed; that Ingram had failed to properly account for such shortages; and that Ingram had failed to pay for water supplied

to him by the District. Following a vigorous cross-examination by appellee's counsel he was asked: "Have you ever been convicted of a felony, Mr. Collier?" He responded, "I have." "When was that?", he was asked, and responded, "In 1936—manslaughter." Thereupon counsel for appellant objected that such was too remote and immaterial and irrelevant, and would have no bearing on the issues in this case, and requested the court to instruct the jury to disregard the testimony. The court overruled the objection and permitted the testimony to stand. The witness was then interrogated concerning the details of his conviction in the State of New Mexico in 1936 for manslaughter, relating that he had killed a man while in the act of breaking into his place of business; that he had received a reduction in his sentence and was placed on parole following which he came to Dallas. Later, he was granted a full pardon by the Governor of New Mexico. He testified that he had been a practicing public accountant in Dallas since 1941 and had been honored by being made president of a Texas association of public accountants. No evidence was presented to show that the witness had lived other than an honorable and upright life since coming to Dallas. Appellant contends that the twenty-eight year old conviction for manslaughter was too remote, as a matter of law, to justify its being considered by the jury on the question of the character and reputation of the witness. We agree.

 Much has been said and written relating to the question of the remoteness of a felony conviction and its tendency to discredit a witness, but there seems to have been no definite rule established as to when to admit and when to reject the testimony of a witness who has been previously convicted of a felony that involves moral turpitude. From a review of both civil and criminal cases it would appear that civil courts have generally held that such a matter depends upon circumstances presented and that the question should usually be left to the discretion of the trial judge. In exercising his discretion the trial judge has an opportunity to consider and weigh all of the facts and circumstances in that particular case. Only for the abuse of discretion is it held that such testimony may call for a reversal. Carr v. De Witt, Tex. Civ.App., 171 S.W.2d 388; York v. Glenn, Tex.Civ.App., 242 S.W.2d 653; Adams v. State Board of Insurance, Tex.Civ.App., 319 S.W.2d 750; Dillard v. State, Tex. Cr.App., 218 S.W.2d 476; Vaughn v. State, Tex.Cr.App., 157 S.W.2d 894. Our courts have never fixed any arbitrary number of years as being too remote to offer a prior felony conviction for the purpose of affecting one's credibility. The following authorities, under the circumstances presented, have held the prior convictions to be too remote: Ten years or more—Carr v. De Witt, supra; York v. Glenn, supra; Transport Ins. Co. v. Cossaboon, Civ.App., 291 S.W.2d 746. Fourteen years—Bernard's, Inc. v. Austin, Tex.Civ.App., 300 S.W. 256. Thirty years—Miller v. Brand, Tex.Civ. App., 32 S.W.2d 874. Twenty years— Texas Employers Insurance Ass'n v. Yother, Tex.Civ.App., 306 S.W.2d 730. Nine years—Travelers Insurance Co. v. Dunn, Tex.Civ.App., 383 S.W.2d 197. Twenty years—Pool v. Sneed, Tex.Civ.App., 173 S.W.2d 768. Ten years—Adams v. State Board of Insurance, supra. In Bunch v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 209 S.W.2d 657, it was held that:

> "There are few cases, if any, in this state which hold that evidence of a conviction fourteen years or more in the past is admissible for the purpose of impeaching a witness in the absence of some facts or circumstances which would render such evidence admissible. Most of the cases that deal with this point are to the effect that a conviction for a felony twelve or fourteen years in the past is too remote, and those convictions that have been held to be admissible are from eight to ten years and down. In the absence of subsequent convictions for theft, or other circumstances that might render the

testimony in question admissible, we are of the opinion that this particular conviction fourteen years prior to the trial of this suit was too remote in order to be admissible for impeaching purposes."

The rule of law relating to the inadmissibility of remote convictions for offenses involving moral turpitude is a sound one. The law, in its wisdom, presumes that after the lapse of many years the rehabilitation of the individual has been successful—that he has paid his debt to society. This presumption may, of course, be rebutted. The record in this case is devoid of any evidence which would rebut the presumption that the witness Collier has completely rehabilitated himself over the period of twenty-eight years which has elapsed since the time of his conviction in 1936. To the contrary, all of the evidence points to the fact that he has led an exemplary life since coming to Texas. We think the conviction is too remote, under the circumstances of this case, and that the trial court abused its discretion in admitting the testimony. Transport Ins. Co. v. Cossaboon, Tex.Civ.App., 291 S.W.2d 746; General Insurance Corp. v. Handy, Tex.Civ. App., 267 S.W.2d 622; Bernard's, Inc. v. Austin, Tex.Civ.App., 300 S.W. 256; Texas Employers Insurance Ass'n v. Yother, Tex. Civ.App., 306 S.W.2d 730.

Appellee argues that if the admission of the prior conviction was error then it was harmless error under Rule 434, T.R.C.P., in that Collier's testimony was allegedly impeached on several other grounds aside from the matter of the prior conviction. We cannot agree. After a careful reading of the entire record in this case we are convinced that the court's action in permitting the jury to consider the prior conviction of Collier was not only error but reversible error. Collier was the only expert accountant produced by appellant and it was his audit of Ingram's records that appellant relied upon to support its defenses of irregularities and misconduct

on the part of Ingram which justified his dismissal. The improper evidence of Collier's prior felony conviction struck at the very heart of his entire testimony and credibility as a witness. We cannot say that the jury disregarded or minimized this testimony because of other alleged impeachment. It is evident from the record that the jury refused to accept Collier's testimony and the improperly admitted prior felony conviction looms as a probable reason for such rejection. In our opinion the admission of the improper evidence probably resulted in the rendition of an improper verdict and judgment. Rule 434, T.R.C.P. Appellant's third point of error is sustained.

We likewise agree with appellant that its Point 4 must be sustained. While the witness W. A. Douthit, president of the Water District, was on the witness stand he was asked whether or not an audit had been made for the year 1963 by the accounting firm of Smith, Baines & Griffith. He acknowledged that such audit had been made and prepared for the Board of Directors of appellant Water District whereupon he was then asked whether or not the audit showed any shortages. Thereupon objection was made that the audit would be the best evidence of its contents. The court overruled such objection and Douthit was permitted to testify that no shortages appeared, as reflected by the audit. We think the court's action in overruling the objection made constituted error.

The rule is clearly established in Texas that if the original writing is not produced or its nonproduction accounted for, evidence of its contents is not admissible. 2 McCormick & Ray, Texas Law of Evidence, § 1563, Page 402; Panhandle & Santa Fe RR. Co. v. McDonald, Tex.Civ. App., 227 S.W.2d 601; 23 Tex.Jur.2d, §§ 234, 235, pp. 355–356. As pointed out in McCormick & Ray, Texas Law of Evidence, Vol. 2, § 1566, p. 409:

"The rule requiring the production of original writings applies only where the purpose of the evidence offered is

842

to prove the *contents* of the document, .for it is only in such cases that the principal danger, that of inaccurate transmission of the terms of the writing, exists."

Appellee counters this contention of error by appellant by claiming that since the firm of Smith, Baines & Griffith prepared the audit at the request of the Board of Directors of appellant Water District, of which Douthit was a member of the Board and president, that such best evidence rule is not applicable since Mr. Douthit's answer to the question constituted an admission by party to the suit of the contents of a written instrument being under the control of the appellant. We cannot agree. It must be observed that the appellant in this case is a public corporation and the officers and directors thereof are public officials or agents. In such a case the law imposes a stricter rule than that which would be applicable in the case of a private corporation because the officers of public corporations are regarded as public officials rather than mere agents. Statements of a public officer, in the absence of express authority, are not competent against the government or agency thereof. Statements of such officer will not be admitted if not made within the scope of the declarant's official duties and authority and in the reasonable discharge thereof. 31A C.J.S. Evidence § 359, pp. 867–869.

As to the availability of the audit itself appellee made no effort to avail himself of the rule relating to production of instruments in the possession of the opposite party either before or during the trial. Since the question of the accuracy of the audit made by some outside firm was of great importance to the issues involved we think it quite apparent that the court committed error in not sustaining the best evidence rule objection in this case.

The error becomes more apparent when the actual financial audit was introduced upon a hearing of motion for new trial, and such document demonstrating a deficit in the Water District funds. This was contrary to the opinion of the witness Douthit who was not shown to be an accountant or one qualified to interpret a statement of this kind. It is our opinion that the error of the trial court was of such a nature as to probably cause the rendition of an improper verdict. Rule 434, T.R.C.P.

For the reasons stated herein the judgment of the trial court is reversed and remanded for a new trial.

Reversed and remanded.